

### LIETUVOS RESPUBLIKOS GENERALINĖ PROKURATŪRA
#### PROSECUTOR GENERAL'S OFFICE OF THE REPUBLIC OF LITHUANIA

Ms. Mary Ellen Warlow  
Director  
Office of International Affairs  
U.S. Department of Justice

21 July 2005, our ref. no. 14.2.-3086(14.5-303)  
*please quote in all correspondence*

SUBJECT: REQUEST FOR LEGAL ASSISTANCE IN CRIMINAL CASE NO. 30-1-0091-05

Dear Madam,

The Prosecutor General's Office of the Republic of Lithuania pays sincere respect to you and, further to the Treaty between the Government of the Republic of Lithuania and the Government of the United States of America concerning Mutual Legal Assistance in Criminal Matters, requests for legal assistance in the following criminal matter.

Please find enclosed herewith a request issued by the Economic Crime Investigation Division of the Crime Investigation Service of Criminal Police of Klaipėda City Chief Police Commissariat of the Republic of Lithuania, seeking legal assistance in the investigation of the criminal case no. 30-1-0091-05, and we respectfully ask you to commission the competent officers to execute the indicated acts.

If your country's legislation does not forbid it, before interviewing a witness please explain him his duty to present full and correct information on anything he knows about the case and to confirm his statement by signing it.

The Prosecutor General's Office of the Republic of Lithuania guarantees that all evidence obtained as a result of this letter in the United States will be used solely for the purposes of investigation of this criminal case and judicial proceedings thereof.

We hope that our request for legal assistance will be granted and thank you for your co-operation in advance. We will satisfy an analogous or other request of yours.

We kindly ask you to forward your answer and collected information to the District Prosecutor's Office of Klaipėda City, at the address: 12 Vilties Str., 91001 Klaipėda, Republic of Lithuania, and inform the Prosecutor General's Office of the Republic of Lithuania upon execution of the request (please quote our reference number and the date of this request in your response).

ENCLOSED: 31 pages

Yours sincerely,

Acting Prosecutor General                                                                 Mr. Vytautas Barkauskas

By: Ms. R. Požarskienė, tel. no. +370 5 266 23 54

*Translated from Lithuanian by Aistė Gilytė, the translator of the Prosecutor General's Office of the Republic of Lithuania, who has been warned about criminal liability under Article 235 of the Criminal Code of the Republic of Lithuania for making false or deliberately misleading translation. Translation corresponds to the original text.*

A. Smetonos str. 4, LT-01515 Vilnius, Lithuania    Tel. +370 5 266 23 05    Fax. +370 5 266 23 17

Translation from Lithuanian language

## KLAIPĖDA GENERAL POLICE COMMISSARIAT
## CRIMINAL POLICE CRIME INVESTIGATION SERVICE
## ECONOMIC CRIME INVESTIGATION DIVISION

**ASSIGNMENT OF LEGAL ASSISTANCE**
In a criminal case No. 30-1-0091-05
Attn. Legal institutions of the United States of America

2005-07-12  Nr. B2-2913 (VK2-55)

Economic Crime Investigation Division of the Criminal Police Crime Investigation Service of Klaipėda General Police Commissariat conducts a pretrial investigation in the criminal case No. 30-1-0091-05 proceeded under evidence of a crime defined in Article 186 Part 1 of the Republic of Lithuania Criminal Code on causing material damage by fraud. No suspects were identified during the investigation.

**Article 186 of the Republic of Lithuanian Criminal Code:**
**Causing material damage by fraud**

1. The one who evades by fraud to pay for work performed, goods received or services rendered or evades to pay compulsory contributions and as a result causes gross material damage to another person, is punishable by public works or fine, or ~~detention~~ *restriction of liberty*, or imprisonment for a period of up to two years.

2. The one who causes by fraud minor material damage to another person, commits a ~~crime~~ *misdemeanour*, thus is punishable by public works or fine, or ~~detention~~ *restriction of liberty*, or arrest.

3. A legal entity is also liable for deed acts specified in Part 1 of this Article.

4. A person is liable for deed acts specified in Parts 1 and 2 of this Article only in presence of a complaint of the aggrieved person or an application of his/her legal representative, or an order of a prosecutor.

On 26.01.2005 we received an application of Antanas Drungilas, the administrator - authorized person of a private company - firm to be liquidated ABF „Lietuvos tara" Klaipėda Branch (registered at the address Šilutės plentas 81, Klaipėda) stating that a company „Transglobal Holdings L.L.C." (registered at the address State of Delaware 2530 Channin Drive Country of New Castle, Wilmington DE 19810; **according to the information of INTERPOL registered at the address: 5960 SYMPHONY WOODS RD STE 310, COLUMBIA MD 21044-3507**. Agent that registered the company - „▓▓▓▓ WORLDWIDE INCORPORATORS LTD.", registered at the address: 1308 DELAWARE AVENUE, P.O. BOX 7570, New Castle WILMINGTON, State: DE Zip: 19806, telephone number 302-655-4500) fails to apply its contractual undertakings by a delay of a payment for delivery of corrugated cardboard boxes to the company to be liquidated ABF „Lietuvos tara" Klaipėda Branch and further avoids doing this. The company „Transglobal Holdings L.L.C." has not paid 51041,05 LTL (fifty-one thousand and forty-one Litas and five cents).

During the pretrial investigation it was discovered that on 07.08.2002 there was a contract No. 02/40 concerning corrugated cardboard boxes (box No. 4) concluded between the company ABF „Lietuvos tara" Klaipėda Branch and the company „Transglobal Holdings L.L.C.". At the moment of conclusion of the contract the company ABF „Lietuvos tara" Klaipėda branch was represented by the Director - Vice President Stasys Bagdonas and the company „Transglobal Holdings L.L.C." was represented by Romaldas Petravičius, personal number ▓▓▓▓ residing at the address Laukininkų g. 1-30, Klaipėda, holding a General Power of Attorney of Belinda Lanyon, the Director of the

aforementioned company, dated 14.02.2002. During the investigation Romanlas Petravičius explained that the aforementioned contract was concluded in the name of the company "Transglobal Holdings L.L.C." since he had powers to conclude such under the General Power of Attorney.

On 26.01.2005 we received an application of Stasys Bagdonas, the General Director of a private company UAB „Klaipėdos kartono tara" (company code ▮▮▮▮, registered at the address Šilutės pl. 81, Klaipėda) stating that the company UAB „Klaipėdos kartono tara" has concluded contracts No. 02/13 dated 12.04.2002 and No. 02/14 dated 18.04.2002 for sale-purchase of corrugated cardboard boxes (box No. 4) with the company „Transglobal Holdings L.L.C". At the moment of conclusion of the contracts the company UAB „Klaipėdos kartono tara" was represented by the Director Valerijus Karakulovas and the company „Transglobal Holdings L.L.C." was represented by Romaldas Petravičius, personal number ▮▮▮▮▮▮ residing at the address Laukininkų g. 1-30, Klaipėda, holding the General Power of Attorney of Belinda Lanyon, the Director of the aforementioned company. On the basis of these contracts and applying its contractual undertakings UAB „Klaipėdos kartono tara" delivered to the company „Transglobal Holdings L.L.C." the production, corrugated cardboard boxes, for 133411,19 LTL (one hundred and thirty-three thousand four hundred and eleven Litas and nineteen cents), however the latter failed to pay for it. During the pretrial investigation R. Petravičius explained that he concluded the aforementioned contracts for the purchase of corrugated cardboard boxes in the name of the company „Transglobal Holdings L.L.C." since he acted in the interests of the company as its authorized representative.

Aiming for a thorough, comprehensive and unbiased investigation of the circumstances of the criminal case, the following actions must be taken in the United States of America:

Examination of a witness - the agent that has registered the company „Transglobal Holdings L.L.C." (▮▮▮▮ WORLDWIDE INCORPORATORS LTD.", registered at the address: 1308 DELAWARE AVENUE, P.O. BOX 7570, New Castle WILMINGTON, State: DE Zip: 19806, phone number 302-655-4500), asking the following questions:

1. Where, when, under what circumstances and on whose initiative he made a decision to register the company „Transglobal Holdings L.L.C."?

2. Who were the shareholders of this company? What was the company engaged in? Who was the director of the company „Transglobal Holdings L.L.C."? Were there any authorized representatives appointed to act in the interests of this company abroad?

3. Does he know Romaldas Petravičius and Belinda Lanyon? If yes, when and how did they meet and what are their relations? Has B. Lanyon worked in the company „Transglobal Holdings L.L.C."? If yes, what was her position and for how long? Does he know where she is currently?

4. What can he say about the General Power of Attorney dated 14.02.2002 and who wrote it? Who was the initiator for appointing a representative of the company? Did the person holding the general power of attorney have powers to act in the name and in the interests of the company?

5. Was he aware of a conclusion of the contract No. 02/40 dated 07.08.2002 with the Republic of Lithuania company ABF „Lietuvos tara" on purchase of the corrugated cardboard boxes? Was he aware of a conclusion of the contracts No. 02/13 dated 12.04.2002 and No. 02/14 dated 18.04.2002 with the company UAB „Klaipėdos kartono tara" concerning the corrugated cardboard boxes? How were activities of a person holding the general power of attorney controlled? Did he have to give any reports on transactions made?

6. Paragraph "G" of the General Power of Attorney dated 14.02.2002 states that "upon request of the company members, the aforementioned representative shall have to report to the Board of Director with respect to any specific action taken in the interests of the company". How were activities of a person holding the general power of attorney controlled and had a person specified in this general power of attorney give reports on actions taken?

7. How and to whom was the General Power of Attorney sent to Lithuania?

8. As the General Power of Attorney states, there is a board of directors in the company. How many members are there in the board and were they aware that there shall be a representative appointed to take care of the company's interests in foreign countries?

9. Was he aware that the company „Transglobal Holdings L.L.C." had not paid the company to be liquidated ABF „Lietuvos tara" and the company UAB „Klaipėdos kartono tara" for production —

6

corrugated cardboard boxes - supplied? Where was the production purchased from the above companies used?

Please note during the examination that the list of questions is not comprehensive.

If you define the location of Belinda Lanyon during the examination, please take the samples of her free and experimental handwriting and signatures (5 pages each). Please also examine her on the aforementioned questions. If she refuses to give samples for the comparative examination in free will, please follow Article 144 of the Republic of Lithuania Criminal Process Code and present the witness a resolution of the prosecutor dated 03.05.2005 to take samples for the comparative examination, if this norm of the criminal process complies with the norms of the United States of America Criminal Process Code. Also, if she voluntarily agrees, please take samples of her free writing and signature.

Article 144 of the Republic of Lithuania Criminal Process Code:

**Taking samples for comparative examination**

1. During a pretrial investigation an officer or a prosecutor has the right to take from the suspect samples for a comparative examination. Such samples from an aggrieved or a witness may be taken when it is necessary to verify whether these persons have left imprints in the place of accident or on objects.
2. If a person refuses to give samples for a comparative examination, a prosecutor shall adopt a resolution which is binding to the person concerned.
3. A protocol must be drawn on taking samples for a comparative examination.

ENCLOSED:

1. General Power of Attorney dated 14.02.2002 - 1 page.
2. Contract No. 02/40 dated 07.08.2002 - 4 pages.
3. Contract No. 02/13 dated 12.04.2002 - 4 pages.
4. Contract No. 02/14 dated 18.04.2002 - 4 pages.
5. Resolution on taking samples for comparative examination dated 03.05.2005 - 1 page.

Head of the Economic Crime Investigation Division          /Signature/   Silvijus Baranauskas
Criminal Police Crime Investigation Service
Klaipėda General Police Commissariat


Prepared by: V. Mockus
+370 46 35 46 71


The text of this document was translated by
Liudvika Urbonavičiūtė, the translator of the Individual Enterprise of D. Petrošienė,
Republic of Lithuania, LT-92128 Klaipėda, Vytauto g. 19/H.Manto g. 1, tel./fax +370 46 400043

## GENERAL POWER OF ATTORNEY

KNOW ALL MEN by these present that TRANSGLOBAL HOLDINGS L.L.C., a limited liability company, created in Delaware, U.S.A., (hereinafter called the "Company"), has made, named, constituted and appointed

Mr. ROMALDAS PETRAVICIUS, ID No

hereinafter called the "Attorney", to be the Company's Attorney with Power to act on behalf of the Company, to do, and execute in all parts of the world all or any of the acts and things following, namely:

A. To open, operate, and close any corporate or other bank accounts, current deposit or other bank accounts; to draw, endorse, and sign checks; to deposit any money, in the name of the Company, and generally to undertake any other banking transactions on behalf of the Company;

B. To bring or defend any action or other proceeding in a court or an arbitration of any country.

C. To enter into any arrangements with any governments or authorities (supreme, municipal, local or otherwise) or any corporations, trust companies, banks, companies or persons, and to obtain from such governments, authorities, corporations, companies or persons, any charges, contracts, decrees, grants, licenses, leases, rights, privileges and concessions which the said Attorney may think desirable in the interest of the Company;

D. To purchase or otherwise acquire, and to sell, exchange, lease, dispose, or and deal with chattels and real personal property and rights of all kinds on behalf of the Company;

E. To demand and receive from all persons, firms, companies or other bodies indebted to the Company all debts and other sums of money now or at any time, hereafter owing from them, and to give and execute all necessary receipts and discharges for the same with power to accept security and to give time for payment of any debt or part thereof, and upon failure to pay such debts, to institute and prosecute any legal or any other proceedings authorized by law for obtaining payment of the same which may seem proper or expedient to the said Attorney;

F. To sign, seal make and execute all such contracts, deeds, agreements and documents as shall be necessary or expedient."

G. Generally, to act as an agent for the Company and to execute and perform on behalf of the Company all lawful and reasonable acts as fully and effectual to all intents and purposes as the Company might or could do;

Any action undertaken through this document must comply with the Articles of Association of the Company as well as the applicable laws of the domicile country of the Company. If requested by the Member of the Company, the attorney-in-fact mentioned herein shall be under obligation to report to the Board of Directors on any particular action performed by him in the name of the Company.

This General Power of Attorney shall be valid from the date below until the competition of the aforementioned duties, but in no case longer than one year from the below date.

IN WITNESS WHEREOF, the Company has caused this General Power of Attorney to be signed this 14 day of FEBRUARY of 2002.

Belinda Lanyon
Member

NUORAŠAS
TIKRAS
Personalo ir juridinės
tarnybos vadovas
Viktoras Janaudis